## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**JOHN DOE**;

      Plaintiff;

v.

**ROCKY MOUNTAIN CLASSICAL ACADEMY;**

**SCHOOL DISTRICT 49;**

**NICOLE BLANC**, individually, and in her official capacity as Dean of Students of Rocky Mountain Classical Academy;

**CULLEN MCDOWELL**, individually, and in his official capacity as Executive Principal of Rocky Mountain Classical Academy;

      Defendants,

---

## COMPLAINT

---

Plaintiff John Doe ("Mr. Doe"), by and through counsel, Kishinevsky & Raykin, LLC, files this its Complaint against Defendants, Rocky Mountain Classical Academy ("RMCA" or ("School"), School District 49 ("District 49" or "District"), Nicole Blanc ("Ms. Blanc"), and Cullen McDowell ("Mr. McDowell"), and for its claims and causes of action states as follows:

### I.    NATURE OF THE CASE

1. This is a civil action seeking declaratory, injunctive, and other appropriate equitable relief to enjoin and restrain the deprivation, under color of state law, of Plaintiff's rights, privileges, and immunities as guaranteed by the Constitution and law of the United States, as more fully

hereinafter appears.  This action seeks redress for violations of, and seeking redress under, federal law, including but not limited to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983; 42 U.S.C. § 1988; 20 U.S.C. § 1681-1688 (Title IX of the Education Amendments of 1972).  All discriminatory conduct alleged herein occurred in a public school setting.

## II.    JURISDICTION, PARTIES, AND VENUE

2.   Jurisdiction is conferred upon this Honorable Court pursuant to 28 U.S.C. § 1331 and is founded upon the deprivation, under color of State law, of Plaintiff's rights, privileges, and immunities guaranteed by the Constitution of the United States, and more particularly under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983; 42 U.S.C. §1988; 20 U.S.C. § 1681-1688 (Title IX of the Education Amendments of 1972).

3.   Plaintiff is a resident of the city of Colorado Springs, El Paso County, Colorado.

4.   The School and District are likewise located in Colorado and educates Colorado students in El Paso County. The School and District are residents of El Paso County, Colorado. Colo. Const. Art. 9, §2.

5.   The remaining individual defendants are residents of Colorado, and all of them were School employees at the time of the alleged wrongdoings herein.

6.   The wrongful acts alleged by Plaintiff occurred in whole or in part in El Paso County, Colorado.

7.   Venue is proper in this Court under 28 U.S.C. §1391(b)(2).

## III.    FACTUAL ALLEGATIONS

8.   Plaintiff's son, B.T., is a five year old boy.

9.  Mr. Doe has attended RMCA since August 2019.

10. Prior to his enrollment into RMCA, Mr. Doe had pierced ears.

11. During  academic evaluations by RMCA, and prior to his kindergarten placement, Mr. Doe wore earrings. Plaintiff was not informed that the earrings were a concern.

12. Plaintiff received a Parent-Student Handbook from Defendant, which contained the desired dress code for both male and female students. Specifically, the handbook stated: "[t]atoos and body piercings, other than girls' earrings, are not allowed. Earrings must be limited to one earring per ear. Large, dangling, or hoop-type earrings are not allowed. Jewelry other than watches for boys or girls, and small earrings on girls, may not be worn." *see* Exhibit 1, p. 43.

13. From the moment Mr. Doe began attending RMCA in August, he wore earrings. The earrings.

14. These earrings are small, blue studs that are consistent with the dress code policy as regards to female students who wear earrings. They are not large, dangling, or hoop-style as forbidden by the dress code policy. Id.

15. On August 27, 2019, Mr. Doe's mother ("Mother") was contacted by Meg Pace ("Ms. Pace"), Mr. Doe's kindergarten teacher, and informed that, "per our dress code, boys can not [sic] wear earrings at school." *see* Exhibit 2, p. 1. Mother thanked Ms. Pace for the email and indicated that Mr. Doe would continue wearing earrings.

16. Mother informed Ms. Pace, "I have requested a formal meeting with the principal to discuss the dress code along with the Non-Discrimination, Equal Rights and Equal Opportunity laws." Id.

17. Nicole Blanc ("Ms. Blanc"), Dean of Students at RMCA, emailed Mother that same day,

advising her of the dress code policy but remained silent on whether the policy was discriminatory. Id.

18. On August 28, Mother sent an email to the members of the RMCA Board to make them aware of her concerns with the dress code policy. She indicated that she believed the policy was unlawful and discriminatory on the basis of gender, and Plaintiff indicated that she may request a meeting with the Board pending the outcome of her meeting with the school. Id., p. 5.

19. A meeting was scheduled for Mother and Defendants to discuss the dress code policy on August 30.

20. Mother, Ms. Pace, and Cullen McDowell ("Mr. McDowell"), RMCA's Executive Principal, attended the August 30 meeting.

21. The August 30 meeting was fruitless and failed to resolve the matter of whether RMCA's dress code discriminated against Mr. Doe.

22. On August 30, 2019, Mother again emailed the RMCA Board and requested a formal meeting "to discuss unlawful discrimination regarding the uniform policy." Id., p. 6.

23. On September 4, Mr. McDowell contacted Mother and stated that he had discussed concerns about the dress code with his "team" and an attorney. "It is our position that there is no discrimination on the part of RMCA relating to your concerns regarding earrings." Id., p. 7.

24. Mr. McDowell provided Plaintiff with a conflict resolution process if she wished to address the matter further.

25. On October 22, Mother was contacted by Ms. Blanc and informed that, because Mr. Doe was continuing to wear earrings to school, he was violating the RMCA dress code.

26. Several emails exchanges took place between Mother and Mr. McDowell between

October 22 and October 31 regarding whether Mother had appropriately followed the conflict resolution process.

27. On November 1, Mr. McDowell sent an email to Mother, which he intended to send to the school attorney, stating, "I am really done with this." Id., p. 17.

28. Following that email, Mr. Doe received 4 "Oops Slips" from Ms. Blank on November 4, 6, 11, and 14. *see* Exhibit 6.

29. Each Oops Slip indicated that Mr. Doe had not complied with the dress code policy because he was wearing earrings.

30. After several emails between Mother and Defendant, Mother was invited to address her concerns at the December 3 Board meeting.

31. Mr. Doe and his parents attended the Board meeting on December 3.

32. On information and belief, Mr. Doe and his family were initially prevented from entering the school building to attend the meeting. Once they were able to gain access, they attended the meeting but were not acknowledged or addressed by the Board.

33. Mother was also not offered the opportunity to address the Board regarding the dress code, and the Board did not appear to have any discussion regarding the potential discriminatory nature of the policy. *see* Exhibit 2, p. 23.

34. The Board maintained the dress code as pertaining to earrings, and it remained unmodified in the handbook.

35. Mr. Doe continued to wear earrings to school during the pendency of this matter with the Board.

36. On December 5, Mr. McDowell informed Mother that Mr. Doe would be required to

comply with the dress code policy by Monday, December 9. Id., p. 25.

37. On December 11, 2019, Mr. Doe arrived at RMCA wearing earrings.

38. On December 11, Ms. Blanc contacted Mother and left a voicemail stating that Mr. Doe would be suspended for the day because he continued to wear earrings. *see* Exhibit 7, *see also* Exhibit 3.

39. Mr. Doe was removed from the school for the remainder of the day.

40. When Mr. Doe returned to school the following day wearing earrings, December 12, 2019, he was again suspended and sent home. *see* Exhibit 4.

41. At that time, Ms. Blanc informed Mother that the school would be looking into dis-enrolling Mr. Doe.

42. Defendants sent an email to Mother later that day, indicating that it would begin the process of dis-enrolling Mr. Doe. Defendants stated, "As of December 12, 2019 your family has still refused to comply with our Uniform Dress Code Policy. Due to this refusal, and in consultation with our attorney and District 49, we will begin the process of dis-enrollment for [Mr. Doe] from Rocky Mountain Classical Academy. He may attend school…December 16, 2019 through Friday, December 20, 2019. On December 20th, 2019 RMCA will dis-enroll [Mr. Doe] from our roster…[W]e will contact his home school…to have his records transferred." See Exhibit 5.

### IV. LEGAL OVERVIEW

43. Section I of the Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

44. Consistent therewith, on June 23, 1972 the President signed Title IX of the Education

Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX").  Pub. L. 92-318, Title IX, §901.  In

pertinent part, Title IX provides, "No person in the United States shall, on the basis of sex, be

excluded from participation in, be denied the benefits of, or be subjected to discrimination under

any education program or activity receiving Federal financial assistance …." 20 U.S.C. §

1681(a).  Title IX expressly contemplates within its nondiscrimination mandate "any public or

private preschool, elementary, or secondary school…." *Id*. at (c).

45. A state is not immune under the Eleventh Amendment to the United States

Constitution from suit in Federal court for a violation of Title IX.  42 U.S.C. § 2000d-7.

46. Each Federal department and agency which is empowered to extend Federal

financial assistance to any education program or activity, by way of grant, loan, or contract, is

authorized to effectuate Title IX by way of rules, regulations, or orders.  20 U.S.C. § 1682.

47. The District is currently largely silent on the issue of school dress codes and their relation

to Title IX, especially in current case law. Other courts, however, have addressed this matter.

48.  In <u>Hayden ex rel. A.H. v. Greensburg Community School Corp</u>., 743 F.3d 569, 15

(2014), the Seventh Circuit Court of Appeals held that plaintiffs were entitled to judgment on

their Title IX claim because the school district's policy regarding hair length on male athletes

applied only to the male teams, with no evidence concerning the content of any comparable

grooming standard that applied to female teams.

49.  <u>Hayden</u> also held that discrimination was intentional  if a policy in question was

protested by plaintiff, the policy was sustained, and it remained in place unmodified. That, the

Court found, amounted to the school district showing deliberate indifference to a known act of

sex discrimination. <u>Id</u>., *see also* <u>Gebser v. Lago Vista Indep. Sch. Dist</u>., 524 U.S. 274, 290-291,

118 S.Ct. 1989, 1999, 141 L.Ed.2d 277 (1998).

50. An Equal Protection violation brought pursuant to 42 U.S.C. §1983 provides that "[e]very person who, under color of any statute, ordinance regulation, custom, or usage, of any State…subjects or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. §1983.

51. The Equal Protection Clause of the Fourteenth Amendment protects individuals against intentional, arbitrary discrimination by government officials and states, "no state shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

52. "Although heightened scrutiny…applies when government actions treat people differently based upon a suspect classification (such as race or national origin) or interfere with fundamental rights (such as freedom of speech or religion), courts presume government action to be valid and will sustain classification if they are rationally related to a legitimate government interest. Derry v. Marion Community Schools, 790 F.Supp.2d 839, 849 (2008).

53. Gender is considered a quasi-suspect classification, requiring intermediate scrutiny in the equal protection context. Hayden, 743 F.3d at 577. "The justification for a gender-based classification thus must be exceedingly persuasive." Id., citing United States v. Virginia, 518 U.S. 515, 533, 116 S.Ct. 2264, 2275, 135 L.Ed.2d 735 (1996).

54. To pass intermediate scrutiny, the policy in question must further an important government interest and must do so by means that are substantially related to that interest.

## V.      CLAIMS AND CAUSES OF ACTION

### A.  FIRST CLAIM FOR RELIEF: 20 U.S.C. § 1681(a) *et seq.* – Sex Discrimination in Violation of Title IX of the Education Amendments of 1972 – against Rocky Mountain Classical Academy; District 49

55. Plaintiff realleges all other paragraphs as if fully set forth herein.

56. 20 U.S.C. § 1681(a) provides that: No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

57. Defendants' dress and grooming code discriminates on its face against boys.

58. Defendants' dress and grooming code does not impose comparable burdens on the sexes.

59. Defendants' dress and grooming code imposes greater burdens on male students.

60. Defendants discriminated against Mr. Doe on the basis of sex by enforcing the facially discriminatory dress and grooming code against him.

61. On December 11, 2019, Mr. Doe was suspended from RMCA for a day for appearing at school wearing earrings.

62. On December 12, 2019, Mr. Doe was again suspended from RMCA for a day for wearing earrings to school.

63. On December 12, 2019, Defendants informed Mother that they would begin the proceedings to have Mr. Doe dis-enrolled from RMCA.

64. Defendants are not entitled to immunity as it receives federal funding under Title IX, which is conditioned on a clear, unambiguous, and unequivocal waiver thereof.  Such waiver does not exist.

65. Because Defendants' discrimination is an intentional violation of Title IX, Plaintiff is entitled to monetary damages.

66. Plaintiff is also entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b), pre-judgment interest, and costs as allowable by federal law.

**B.   FIRST CLAIM FOR RELIEF: 20 U.S.C. § 1681(a) *et seq.* – Retaliation in Violation of Title IX of the Education Amendments of 1972 – against Rocky Mountain Classical Academy**

67. Plaintiff alleges all other paragraphs as if fully set forth herein.

68. 20 U.S.C. § 1681(a) provides that: No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

69. Title IX also prohibits retaliation against individuals who report sex discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 176-77 (2005).

70. Mother reported concerns about the discriminatory nature of RMCA dress code to RMCA staff Ms. Blank and Mr. McDowell.

71. Mother also reported concerns about the dress code to RMCA Board members.

72. In response to these reports, the Defendants offered to meet with Mother to discuss the dress code policy on August 30, 2019.

73. After meeting with Mother on August 30, Defendants upheld the dress code policy, which barred male students from wearing earrings.

74. Mother requested a formal meeting with the Board to discuss the discriminatory nature of the dress code policy as it pertained to Mr. Doe. That meeting was held on December 3, 2019.

75. The Board upheld the policy, declining to address its discriminatory intent.

76. Mr. Doe continued to attend school wearing earrings after December 3, 2019.

77. On December 11, 2019, Mr. Doe was suspended from RMCA for a day for appearing at school wearing earrings.

78. On December 12, 2019, Mr. Doe was again suspended from RMCA for a day for wearing earrings to school.

79. On December 12, 2019, Defendants informed Mother that they would begin the proceedings to have Mr. Doe dis-enrolled from RMCA.

80. At no time prior to this point did Mother express an interest or intent in removing Mr. Doe from RMCA.

81. This retaliation constitutes a *per se* intentional violation of Title IX under clearly established Supreme Court precedent.

82. RMCA is not entitled to immunity as it receives federal funding under Title IX, which is conditioned on a clear, unambiguous, and unequivocal waiver thereof.  Such waiver does not exist.

83. Because RMCA's retaliation is an intentional violation of Title IX, Plaintiff is entitled to monetary damages.

84. Plaintiff is also entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b), pre-judgment interest, and costs as allowable by federal law.

### C.  CLAIM FOR RELIEF: 42 U.S.C. § 1983 – Sex Discrimination in Violation of the Equal Protection Clauses of the Fourteenth Amendment – against All Defendants

85. Plaintiff realleges all other paragraphs as if fully set forth herein.

86. 42 U.S.C. § 1983 provides that: "Every person, who under color of any statute,

ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress …."

87. Plaintiff is a citizen of the United States and Defendants are persons for the purposes of 42 U.S.C. § 1983.

88. At all relevant times Defendants were acting under the color of state law in their capacity as employees at a public school.

89. As the alleged conduct occurred during school hours, Defendants' acts were conducted within the scope of their employment.

90. The Equal Protection Clause requires states to treat an individual in the same manner as others in similar conditions and circumstances.

91. Defendants' intentional discrimination against Mr. Doe resulted in multiple suspensions and dis-enrollment from RMCA, thereby depriving him of his protected interest in a right to a public education free from sex-based discrimination and caused other damages.

92. Defendants are not entitled to qualified immunity for their alleged acts.

93. Defendants' enforcement of the discriminatory dress and grooming policy violated clearly established law.

94. As a direct and proximate result of Defendants' conduct, Plaintiff was deprived of his federally-protected individual rights and suffered other damages including severe emotional distress entitling him to compensatory and special damages, in amounts to be determined at trial.

95. In order for a municipality to be liable for damages, a plaintiff must show that his or her rights were violated pursuant to an official policy of the district or the plaintiff must show that his or her rights were violated by one of the district's final policymakers. *Milligan-Hitt v. Bd. of Trs., Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1223 (10th Cir. 2008).

96. As the Dean of Students and the Executive Principal, Ms. Blanc and Mr. McDowell are final policymakers for RMCA with respect to discipline of students and investigation of behavioral incidents.

97. Furthermore, Defendants' discrimination is pursuant to an official, written policy of the school.

98. On information and belief, District 49 is aware of, and has approved, RMCA's written uniform and grooming policy. Because District 49 was made aware of and approved, the written policy, RMCA's written uniform and grooming policy is an official policy of District 49.

99. The Defendants' discriminatory, written dress and grooming policy was the moving force behind Plaintiff's injuries.

100. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b), pre-judgment interest, and costs as allowable by federal law.

101. Plaintiff is also entitled to punitive damages against Defendants pursuant to 42 U.S.C. § 1983 as Defendants acted maliciously, willfully, or with a reckless and wanton disregard for Plaintiff's Constitutional rights.

**D. FOURTH CLAIM FOR RELIEF: DECLARATORY AND INJUNCTIVE RELIEF**

102. Plaintiff realleges all other paragraphs as if fully set forth herein.

103.     This is a civil rights suit in part requesting declaratory relief and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-2202 brought by Mr. Doe to enjoin the discriminatory conduct alleged above on behalf of himself and all other RMCA students.

104.     The parties have an actual dispute regarding whether RMCA and its agents and/or employees violated Mr. Doe's constitutionally protected right to an education free from sex-based discrimination as well as whether RMCA, through final policymakers' actions, has a policy of Title IX noncompliance.

105.     Plaintiff is seeking a permanent injunction prohibiting Defendants from enforcing the dress and grooming code against Plaintiff and prohibiting the Defendants from taking any disciplinary action against Plaintiff, including suspending Plaintiff, expelling Plaintiff, disenrolling Plaintiff, or otherwise disciplining Plaintiff on the basis of the dress and grooming policy.

106.     WHEREFORE, Plaintiff Mr. Doe requests declaratory judgment entered in his favor and against the Defendants that: Defendants' rules, regulations, policies, and procedures are unconstitutional and void; and Defendants have under color of law deprived him of his rights, privileges, and immunities as guaranteed by the Constitution and Laws of the United States.

107.     Plaintiff Mr. Doe further requests that the Court: (1) issue a temporary restraining order and a preliminary injunction pursuant to F.R.C.P. 65, ordering Defendants, their officers, agents, employees, successors, attorneys, and all those in active concert or participation with them to refrain immediately and pending the final hearing and determination of this action from discriminatory conduct; (2) issue a permanent injunction perpetually enjoining and restraining

Defendants, their officers, agents, employees, successors, attorneys, and all those in active

concert or participation with them, of the conduct complained; (3) award to Mr. Doe costs and

disbursements, as well as reasonable attorney's fees; and (4) award Mr. Doe such other and

further relief as this Court may deem proper, including but not limited to requiring Defendants to

effect proper training to prevent the recurrence of such conduct in their hiring, firing, training

and educational policies and procedures.

108.     WHEREFORE, Plaintiff Mr. Doe requests that judgment enter in her favor and

against the Defendants jointly and severally, in an amount to be determined by a judge or jury

and that the Court also award the Plaintiff his legal fees and costs incurred in pursuing this

action.

## VI.    DAMAGES

109.     The Defendants' discriminatory and retaliatory conduct alleged hereinabove has

caused the Plaintiff the following damages:

a.   Emotional upset, stress, and anxiety in an amount to be established at trial;

b.   Out-of-pocket expenses, litigation costs, and attorney fees in amounts to be

established at trial.

110.     Defendants' violations of Title IX and the Equal Protection Clause were willful,

entitling the plaintiff to an award of punitive damages to the fullest extent permitted by law.

## VII.    REQUEST FOR RELIEF

Plaintiff requests that the court enter judgment in his favor and against Defendant as follows:

111.     Awarding the Plaintiff general damages for emotional distress in an amount to be

established at trial;

112.    Punitive damages, pursuant to 42 U.S.C. § 1981, 2000(e), in the maximum

amount permitted by law;

113.    Awarding the Plaintiff statutory and reasonable attorney fees, litigation expenses,

and costs incurred in this action;

114.    Awarding Plaintiff pre-judgment interest; and

115.    Awarding the Plaintiff any additional and further relief that the court finds

equitable, appropriate, or just.

**DATED** this 13th day of December, 2019.

Respectfully submitted by:

*s/ Igor Raykin*
Igor Raykin, Esq., Atty. Reg. #43081
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Rd., Suite 150
Aurora, CO 80014
Phone: 720-748-8888
Fax: 720-748-8894
E-mail: igor@coloradolawteam.com
Attorney for Plaintiff

*s/ Christie Bebo*
Christie Bebo, Esq., Atty. Reg. #51971
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Rd., Suite 150
Aurora, CO 80014
Phone: 720-748-8888
E-mail: christie@coloradolawteam.com
Attorney for Plaintiff