IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-03530-DDD-NYW

JOHN DOE through his mother and next friend JANE DOE,
    Plaintiffs,
 v.

ROCKY MOUNTAIN CLASSICAL ACADEMY, *et al.*,
    Defendants.

## MOTION TO DISMISS

Defendants hereby move to dismiss the Amended Complaint [Doc. 12] (hereinafter "Complaint").

### Certificate of Conferral

The undersigned conferred with counsel for Plaintiffs by telephone on February 5, 2020, about Defendants' belief that the Complaint is deficient as a matter of law. Counsel for Plaintiffs disagrees and opposes this Motion.

**I.    INTRODUCTION**

This case asks whether RMCA's earring policy – that prohibits boys from wearing earrings at school but permits girls to do so – violates either Title IX or the Equal Protection Clause. The answer to this question is 'no,' and therefore the Complaint should be dismissed.

Plaintiffs assert three substantive claims under two sources of law. Namely, Plaintiffs bring claims against RMCA under Title IX, 20 U.S.C. § 1681(a), for (1) gender discrimination and (2) retaliation. Complaint, First and Second Claims ¶¶ 55-84. Plaintiffs also bring a third claim against all three Defendants under 42 U.S.C. §1983 for violation of the Equal Protection

Clause. *Id.*, Third Claim ¶¶ 85-100. All three causes of action should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## II.     PROCEDURAL POSTURE AND STANDARD OF REVIEW

On December 18, 2019, Plaintiffs filed their Complaint and a motion for preliminary injunction [Doc. 13], requesting the Court enjoin RMCA from continuing to discipline John Doe for violating the earring policy. On January 14, 2020, the Court held the preliminary injunction hearing. On January 21, the Court issued an Order [Doc. 33] denying the request for preliminary injunction, concluding that Plaintiffs failed to show a substantial likelihood of success on the merits.

Different legal standards govern a motion for preliminary injunction and a motion to dismiss. *See Am. Ass'n of People with Disabilities v. Herrera*, 690 F.Supp.2d 1183, 1192-93 (D.N.M. 2010). A request for preliminary injunction requires a court to take evidence relatively quickly and informally so that it may make predictions about the plaintiffs' likelihood of success on the merits. *Id.* at 1193.

In contrast, this Motion to Dismiss under Rule 12(b)(6) requires the Court to determine if the Complaint states a plausible claim for relief under the *Iqbal/Twombly* standard. Under this standard, "a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts need not accept legal conclusions as true. *Khalik*, 671 F.3d at 1190. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### III.  ARGUMENT

#### A.  The Title IX Claims Should Be Dismissed

Plaintiffs bring two claims against RMCA only[1] under Title IX, 20 U.S.C. § 1681(a): gender discrimination and retaliation. The elements of the former are: (1) John Doe was subjected to discrimination under Title IX because RMCA's earring policy prohibits him from wearing earrings at school; (2) RMCA receives federal assistance; and (3) his inability to wear earrings was on the basis of sex. Complaint, ¶¶ 57-63; *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996). The elements of Plaintiffs' Title IX retaliation claim are: (1) Jane Doe engaged in allegedly "protected activity" under Title IX by reporting her concerns about the dress code, (2) RMCA knew of the protected activity, (3) RMCA took a materially adverse school-related action against John Doe (4) that was causally related to the protected activity. Complaint, ¶¶ 69-81; *Tackett v. Univ. of Kan.*, 234 F.Supp.3d. 1100, 1109 (D. Kan. 2017).

There are three reasons to dismiss the Title IX claims. Both claims fail on the first element of each for two reasons. First, *Chevron* deference requires this Court to recognize that for almost forty years Title IX does not apply to "codes of personal appearance." Second, RMCA's earring policy does not constitute sex discrimination. Third, Plaintiffs' claim for retaliation fails on the fourth element; Plaintiffs have not alleged a causal connection between Jane Doe's reporting and RMCA's discipline of John Doe.

##### 1.  *Chevron* Deference: Title IX Does Not Apply to Personal Appearance Codes

Title IX's operative provision, 20 U.S.C. § 1681(a), is written in very general terms. Courts have often noted that "not all distinctions on the basis of sex are impermissible under Title IX." *Peltier v. Charter Day Sch. Inc.*, 384 F.Supp.3d 579, 589 (E.D.N.C. 2019). *Accord*

---

[1] Title IX "has consistently been interpreted as not authorizing suit against school officials…." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009).

*Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 98 (2d Cir. 2012) ("not every decision to maintain separate sports programs for male and female students constitutes proscribed discrimination" under Title IX). Indeed, Title IX itself explicitly permits sex-based distinctions related to admissions to elementary and secondary schools, and it "exempts military service schools and traditionally single-sex public colleges from all of its provisions." *Fitzgerald*, 555 U.S. at 257 (citing 20 U.S.C. §1681(a)(1) and §§1681(a)(4)-(5)). Title IX expressly permits "maintaining separate living facilities for the different sexes." 20 U.S.C. §1686. It also permits distinctions on the basis of sex for voluntary youth service organizations, such as Girl and Boy Scouts; secondary school leadership conferences, such as Boys and Girls State/Nation; father-son and mother-daughter activities at schools; and college scholarships awarded by "beauty pageants." 20 U.S.C. §§1681(a)(6)(B), (7)-(9).

Given both its operative provision's generality and its numerous sex-based exceptions, it is hardly surprising that courts have long deferred to U.S. Department of Education regulations to determine the precise contours of Title IX's substantive reach. *See Biediger*, 691 F.3d at 96-98 (giving a "particularly high" degree of *Chevron* deference to the DOE's regulations regarding Title IX compliance for university sports programs). Indeed, "Congress has expressly delegated to the Department of Education the authority 'to effectuate the provisions of section 1681...by issuing [regulations].'" *Conley v. Nw. Fla. State Coll.*, 145 F.Supp.3d 1073, 1080 (N.D.Fla. 2015)(quoting 20 U.S.C. §1682). *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 288 (1998)("[Title IX] entitles agencies who disburse education funding to enforce their rules implementing the nondiscrimination mandate…")(citing 20 U.S.C. §1682).

In 1982, the Department of Education revoked a prior Title IX regulation, 34 C.F.R. § 106.31(b)(5), that had "prohibit[ed] discrimination in the application of codes of personal

appearance." Nondiscrimination Regulation, 47 Fed. Reg. 32,526, 1982 WL 148413 (July 28, 1982). The DOE decided that the "[d]evelopment and enforcement of appearance codes is an issue for local determination." *Id.*

Another federal district court confronted with a school dress code dispute applied *Chevron* deference in this context. *Peltier*, 384 F.Supp.3d at 588-90. It first noted that "Title IX does not directly speak to the 'precise question' of school uniform policies or appearance codes, suggesting that Congress left this matter to the agency's discretion." *Id.* at 590. "Additionally, in thirty-[eight] years, Congress has never overridden [the DOE's] interpretation of [Title IX]" deferring decisions about dress codes to local school officials. *Id.* Accordingly, it dismissed the Title IX claims. *Id.* This Court should do likewise.

### 2. RMCA's Earring Policy Does Not Constitute Sex Discrimination

As discussed below in Section III.B.1.b, RMCA's earring policy does not constitute sex discrimination under Title IX. The Tenth Circuit applies the same analytical framework to claims of gender discrimination under Title VII, Title IX, and the Equal Protection Clause. *English v. Colorado Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001)(applying same framework to Title VII and equal protection claims); *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 n. 8 (10th Cir. 2017)(same for claims under Titles VII and IX); *Roberts v. Colo. State Bd.*, 998 F.2d 824, 832 (10th Cir. 1993)(Title VII is "the most appropriate analogue when defining Title IX's substantive standards"). *See also Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000)(Title VII showing "mirrors" that for §1983 equal protection claim). The substantive analysis is conducted below.

### 3. Plaintiffs Have Not Alleged Retaliation

Plaintiffs also claim Title IX retaliation related to Mrs. Doe reporting her concerns about the earring policy. Complaint, ¶¶ 70-81. As mentioned above, however, this claim fails for a second reason as well. Namely, Plaintiffs have failed to allege that Mrs. Doe's reports were causally related to the School's discipline of John (fourth element of retaliation). *See Tackett*, 234 F.Supp.3d. at 1109. To the contrary, Plaintiffs allege that RMCA disciplined John because he wore earrings to school in violation of its dress code. Complaint, ¶¶ 37-42, 60-62, 77-78, 104-05, 98 ("[RMCA's] written dress and grooming policy was the moving force behind Plaintiff's injuries."). Plaintiffs make no allegations that RMCA took any disciplinary action against John because of Mrs. Doe's reports about the policy. This claim should be dismissed.

### B. The Equal Protection Claim Should Be Dismissed

Plaintiffs bring one cause of action, via 42 U.S.C. §1983, for violation of the Equal Protection Clause. Complaint, ¶¶ 86-100. In contrast to the First and Second Claims, they assert this against all three Defendants. *Id.* The elements are: (1) Defendants deprived John Doe of equal protection of the law; and (2) the alleged deprivation was committed under the color of state law. *Dodds v. Richardson*, 614 F.3d 1185, 1193 & n.1 (10th Cir. 2010). This claim fails as to all three Defendants on the first element; John Doe's inability to wear earrings to school does not violate equal protection. Moreover, the individual Defendants should be dismissed because they have qualified immunity.

### 1. RMCA's Earring Policy Does Not Violate the Equal Protection Clause

There are two reasons Plaintiffs' equal protection claim fails as a matter of law. First, the frustration of John Doe's desire to wear earrings to school does not "directly and sharply implicate basic constitutional values" and therefore his claim is "not cognizable in federal courts

under the principles stated in *Epperson v. Arkansas*." *Freeman v. Flake*, 448 F.2d 258, 262 (10th Cir. 1971). Second, if this Court finds his claim cognizable, his allegations fail to state a claim of gender discrimination because RMCA's earring policy is "just one component of a set of grooming standards that impose comparable, although not identical, responsibilities on male and female [students]." *Hayden v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 580 (7th Cir. 2014).

### a.   Plaintiffs Do Not Present a Cognizable Federal Claim

Mrs. Doe wants her six-year old son, John, to be able to wear earrings to kindergarten. They present no allegations that this desire is motivated by sincerely-held religious beliefs or John's race, national origin, or ethnic heritage. Similarly, they do not allege that John wearing earrings to school is expressive activity protected by the First Amendment, a fundamental liberty interest, or motivated by his parents' substantive due process interest in raising him. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000). Rather, it is simply their personal preference that he do so.

Plaintiffs do not allege that John's inability to wear earrings is part of a larger gender-discriminatory pattern by which RMCA discriminates against boys and in favor of girls. Plaintiffs do not challenge any other aspect of the School's operation generally or its dress code specifically. Indeed, Plaintiffs affirmatively allege that John's earrings are otherwise consistent with RMCA's dress code, Complaint, ¶ 14, implying that they approve of it generally and the order it brings to the learning environment. Plaintiffs' sole objection is that John cannot wear earrings but his female classmates can.

The Tenth Circuit has repeatedly held that such challenges do not "directly and sharply implicate basic constitutional values" and therefore are "not cognizable in federal courts." *Freeman*, 448 F.2d at 262. In three successive Tenth Circuit cases, male students and their parents challenged school dress codes on the grounds that they infringed upon the plaintiffs' free

exercise of religion; freedom of speech; equal protection of the law in regards to race, national origin, and cultural heritage; and substantive due process of law, both in terms of the students' personal liberty interest to be "let alone" and their parents' interest to "raise their children according to their own religious, cultural and moral values." *See id.* at 261; *New Rider v. Bd. of Educ.*, 480 F.2d 693, 695, 698, 700 (10th Cir. 1973); *Hatch v. Goerke*, 502 F.2d 1189, 1191-92 (10th Cir. 1974). In these three cases, the Tenth Circuit explicitly recognized the allegations and evidence presented by the students and parents regarding the otherwise constitutionally protected classifications. *Freeman*, 448 F.2d at 261 ("the strongest constitutional argument which can be made on behalf of the students is based on the 'liberty' assurance of the Due Process Clause"); *New Rider*, 480 F.2d at 700 (Lewis, C.J., concurring in the result)("The plaintiffs here attack the subject hair code as violative of their right to free speech, due process, and as discriminatory to their race and religion."); *Hatch*, 502 F.2d at 1192 ("the complaint here makes a broad claim of discriminatory effect on the basis of race or national origin…along with other generalized allegations on religion"). Despite this explicit recognition, the Tenth Circuit dismissed the dress code challenges for "failure to state a claim," *Freeman*, 448 F.2d at 262, on the ground that they did not present a "substantial constitutional question cognizable in the federal courts." *New Rider*, 480 F.2d at 695. *Accord Freeman*, 448 F.2d at 262; *Hatch*, 502 F.2d at 1192. Rather, the Tenth Circuit held that local school officials, not federal courts, were the proper authorities for resolving such questions involving the effective day-to-day operations of public schools. *Id.*

Historically, federal courts at every level have deferred such decisions to local school authorities. "By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic

constitutional values." *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968). *See also Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 291 (5th Cir. 2001)("While [p]arents may have a fundamental right in the upbringing and education of their children, this right does not cover the [p]arents' objection to a public school Uniform Policy."); *Derry v. Marion Cmty. Sch.*, 790 F.Supp.2d 839, 850 (N.D. Ind. 2008)("Plaintiffs do not have a fundamental right to direct the dress code or uniform policy that applies at McCulloch Middle School.")(cited in Complaint, ¶52). As summarized by the Sixth Circuit,

> While parents may have a fundamental right to decide *whether* to send their child to a public school, they do not have a fundamental right generally to direct *how* a public school teaches their child. Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or, as here, a dress code, these issues of public education are generally "committed to the control of state and local authorities."

*Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395-96 (6th Cir. 2005)(emphasis in original; quoting *Goss v. Lopez*, 419 U.S. 565, 578 (1975)).

In 1995, the Texas Supreme Court likewise dismissed a class action by adult male high school students who objected to dress codes that permitted earrings and long hair for female students but not for them. *Barber v. Colo. Indep. Sch. Dist.*, 901 S.W.2d 447 (Tex. 1995). The court concluded, "[The plaintiff's] claims do not manifest such an affront to his constitutional rights as to merit our intervention in his case." *Id.* at 450 (citing *Ferrell v. Dallas Indep. Sch. Dist.*, 392 F.2d 697, 702-04 (5th Cir. 1968)). It continued, "It is a matter of common sense that the state judiciary is less competent to deal with students' hair length than a parent, school board, administrator, principal, or teacher." *Id.*

This Court should similarly dismiss the Does' challenge here. Whether six-year old John should be able to exercise his personal preference for wearing earrings to school does not

"directly and sharply implicate basic constitutional values." *Freeman*, 448 F.2d at 262. Under our constitutional system, those decisions are properly "committed to the control of state and local authorities." *Id.* "The judiciary is not designed to operate and manage school systems." *New Rider*, 480 F.2d at 700.

> **b. RMCA's Earring Policy Does Not Constitute Sex Discrimination Because It Imposes Comparable Obligations on Male and Female Students**

Even if the Court finds Plaintiffs have stated a cognizable claim, it should still dismiss their equal protection challenge on the ground that RMCA's earring policy does not constitute sex discrimination. "Whether and when the adoption of differential grooming standards for males and females amounts to sex discrimination is the subject of a discrete subset of judicial and scholarly analysis." *Hayden*, 743 F.3d at 577. *See generally* Jeremiah Newhall, *Sex-Based Dress Codes and Equal Protection in Public Schools*, 12 Appalachian J. Law 209 (2013). The Seventh Circuit in *Hayden* confronted an equal protection challenge to a school hair-length policy. 743 F.3d at 576-82. Accordingly, it collected cases from around the country, *id.* at 577-78,[2] and concluded that a policy that "applies only to male [students], but which is just one component of a set of grooming standards that impose comparable, although not identical, responsibilities on male and female [students] does not constitute sex discrimination," *id.* at 579-80.[3]

RMCA's uniform policy satisfies this standard. *See* Complaint, Exhibit 1 (Parent-Student Handbook), pages 41-43 (uniform policy). It is a comprehensive set of appearance standards that

---

[2] As recently as 2015, a federal district court found that "every federal court of appeals that has addressed the issue has similarly found that prescribing gender differentiated hair length standards does not create an actionable claim under Title VII." *Viscecchia v. Alrose Allegria*, 117 F.Supp.3d 243, 250 (E.D.N.Y. 2015)(collecting cases).

[3] As mentioned, the Tenth Circuit employs the same analytical framework for gender discrimination claims under Title VII, Title IX and the Equal Protection Clause. Accordingly, the Court should adopt *Hayden*'s standard for both the Title IX and equal protection claims.

imposes comparable, although not identical, obligations on male and female students to dress in a traditional, conservative manner. It contributes to RMCA's "high standard of excellence." *Id.* at page 41. While Plaintiffs allege the dress code "does not impose comparable burdens on the sexes" and it "imposes greater burdens on male students," *id.*, ¶¶ 58-59, these are merely conclusory allegations that are insufficient as a matter of law. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements…, supported by mere conclusory statements, do not suffice."); *Khalik*, 671 F.3d at 1190 (same).

Given the foregoing, it is no surprise that every equal protection challenge by male students to an earring policy like RMCA's has been rejected by the courts. *See Barber*, 901 S.W.2d at 450; *Olesen v. Bd. of Educ.*, 676 F.Supp. 820, 823 (N.D.Ill. 1987); *Hines v. Caston Sch. Corp.*, 651 N.E.2d 330, 335-36 (Ind.App. 1995); *Jones v. W.T. Henning Elem. Sch.*, 721 So.2d 530, 532 (La.App. 1998).

At elementary and secondary schools, it simply does not constitute sex discrimination under the Equal Protection Clause (or Title IX) to have a uniform policy that permits girls to wear earrings but not boys as part of a comprehensive set of appearance standards.[4] This Court should dismiss the §1983 (and Title IX) claim on this basis.

2. **The Individual Defendants Are Entitled to Qualified Immunity**

Plaintiffs bring their §1983 claim against Cullen McDowell and Nicole Blanc in their individual and official capacities. Complaint, page 1 (Caption, Introductory Paragraph) and page

---

[4] *Hayden* is distinguishable for precisely this reason. As the Seventh Circuit wrote, it was "dispositive" that the extensive "line of precedent" related to school and workplace dress codes had been "ignored entirely in this appeal," and that "[t]he parties [had] litigated the hair-length policy in isolation rather than as an aspect of any broader grooming standards…." 743 F.3d at 578. Moreover, the recent Tenth Circuit case, *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792 (10th Cir. 2019), is several steps even further afield. It involved a city-wide ordinance that would have imposed criminal penalties on women, but not men, if they went topless in public. *Id.* at 795. Factually and legally, that is a far cry from a comprehensive dress code in a K-8 charter school in Colorado Springs.

11 (subheading for third Claim for Relief). The individual Defendants have no place in this lawsuit. This Court should dismiss them entirely.

First, they have qualified immunity. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)("Government defendants sued under §1983 in their individual capacities have qualified immunity…when their conduct does not violate clearly established…constitutional rights of which a reasonable person would have known.")(internal quotation marks and citation omitted). "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged [1] make out a violation of a constitutional right, and [2] whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* (citation omitted).

The individual Defendants are entitled to qualified immunity under both prongs of this test. For the reasons already stated herein, Plaintiffs have not made out a violation of a constitutional right. In addition, the alleged violation was not "clearly established" during this 2019-20 school year.

Courts impose an objective test as to whether a right is "clearly established," *i.e.*, whether it would be clear to a reasonable officer that the conduct was unlawful in the situation presented. *Id.* For Plaintiffs to satisfy the "clearly established" prong, they must cite to Supreme Court or Tenth Circuit precedent that "place[s] the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S.Ct. 548, 551 (2017). In evaluating whether Plaintiffs have met this burden, the Supreme Court has repeatedly warned courts "not to define clearly established law at a high level of generality." *City and Cty. of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1776 (2015). Rather, "the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S.Ct. at 552.

There was no clearly established law prohibiting the enforcement of RMCA's earring policy against John Doe. To the contrary, all the relevant law supports the conclusion that RMCA's earring policy is legal. Accordingly, the individual Defendants are entitled to qualified immunity from the §1983 claim in their individual capacities. *Brown*, 662 F.3d at 1164.

Moreover, the §1983 claim should also be dismissed against them in their official capacities. The Tenth Circuit has recognized that "suing individual defendants in their official capacities under §1983…is essentially another way of pleading an action against the…municipality they represent." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). This Court has noted, "Where, as here, the entity is also named, there is no need for an official-capacity claim. As a result, [plaintiff's] official-capacity claims against [defendants] are redundant, unnecessary, and potentially confusing." *Silverstein v. Fed. Bureau of Prisons*, 704 F.Supp.2d 1077, 1087 (D. Colo. 2010)(striking the claim under Rule 12(f)). *Accord Stump v. Gates*, 777 F.Supp. 808, 816 n.3 (D. Colo. 1991)("Naming either is sufficient. Naming both is redundant."). The individual Defendants request that this Court either dismiss the claim against them under Rule 12(b)(6) or strike it under Rule 12(f).

### IV. CONCLUSION

The Tenth Circuit has noted that "parents simply do not have a constitutional right to control each and every aspect of their children's education and oust the state's authority over that subject." *Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, 699 (10th Cir. 1998). To the contrary, the Supreme Court and Tenth Circuit have both repeatedly held that day-to-day operational decisions, such as whether kindergarten boys can wear earrings to school, is properly decided by local school officials, not federal courts. *Epperson*, 393 U.S. at 104; *Hatch*, 502 F.2d at 1192. The Amended Complaint should be dismissed in its entirety.

RESPECTFULLY SUBMITTED this 14th day of February 2020.

                SPARKS WILLSON, P.C.

                By: *s/ Eric V. Hall*
                    Eric V. Hall
                    24 S. Weber St, Suite 400
                    Colorado Springs, CO 80903
                    (719) 634-5700
                    evh@sparkswillson.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1) limiting motions to dismiss to 4,000 words. This motion contains 3,986 words.

                By: *s/ Eric V. Hall*
                    Eric V. Hall

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of February 2020, a correct copy of the foregoing **MOTION TO DISMISS** was filed and served via CM/ECF to the following:

Igor Raykin, Atty. Reg. #43081
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 767-1846
E-mail: igor@coloradolawteam.com
Attorney *for Plaintiff*

Christie Bebo, Atty. Reg. #51971
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Road, Suite 150
Aurora, CO 80014
Phone: 720-748-8888
E-mail: christie@coloradolawteam.com
Attorney *for Plaintiff*

Michael Nolt, Atty. Reg. # 50668
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Road, Suite 150
Aurora, CO 80014
Phone: 720-863-4256
E-mail: michael@coloradolawteam.com
*Attorney for Plaintiff*

By: *s/ Eric V. Hall*
     Eric V. Hall