IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-03530-DDD-NYW

JOHN DOE,

    Plaintiff;

v.

ROCKY MOUNTAIN CLASSICAL ACADEMY, et al,

    Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

---

COMES NOW, Plaintiff John Doe ("Plaintiff"), by and through counsel, and hereby submits this Response to Defendants' Motion to Dismiss, and states as follows:

**INTRODUCTION**

This case arises out of Defendant Rocky Mountain Classical Academy's ("RMCA") dress and grooming code ("dress code"). RMCA's dress code contains multiple restrictions on dress and grooming that apply equally to both male and female students. However, the dress code contains multiple provisions that place greater restrictions on male students that do not apply to female students. These restrictions include the restriction that gave rise to this case: the earring policy. The dress code's earring policy prohibits male students from wearing earrings at school but allows female students to do so. RMCA's dress code facially discriminates on the basis of sex in violation of Title IX and the Equal Protection Clause of the Fourteenth Amendment.

1

**ARGUMENT**

In resolving a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all factual allegations in a complaint and view those allegations in the light most favorable to the Plaintiff. *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009); *Arnold v. McClain*, 926 F.2d 963, 965 (10th Cir. 1991). While a complaint is required to provide "more than labels and conclusions" and must provide factual allegations that "raise a right ot relief above the speculative level," a complaint "does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint satisfies the pleading requirement to state a claim that is plausible on its face when the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**I.  Plaintiff has adequately pleaded a violation of the Equal Protection Clause**

The Equal Protection Clause of the Fourteenth Amended provides that no state may "deny to any person…the equal protection of the laws." U.S. Const. Amdt. XIV, § 1. "Classifications that distinguish between males and females are 'subject to scrutiny under the Equal Protection Clasue.'" *Craig v. Boren*, 429 U.S. 190, 197 (1976)(quoting *Reed v. Reed*, 404 U.S. 71, 75 (1971)). "Classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." *Id.*, at 198. To justify classification based on gender, the proffered justification must be "exceedingly persuasive." *United States v. Virginia*, 518 U.S. 515, 533 (1996). "The burden of justification is demanding, and it rests entirely on the State." *Id*. "The State must show at least that the challenged classification serves important governmental objectives and that the discriminatory means employed are substantially related to the

achievement of those objectives." *Id.* (internal quotations omitted). "The justification must be genuine, not hypothesized or invented *post hoc* in response to litigations. And it must not rely on overbroad generalizations about the different talents, capacities, or preferences males and females." *Id*.

**The school setting does not preclude constitutional review of the dress code.**

Much of Defendants' argument rests on their unpersuasive attempt to explain why the above controlling Supreme Court precedent does not apply to the sex-based classification contained in the dress code. Defendants suggest a line of Tenth Circuit cases from the early 1970s, before the Supreme Court decided the above cases, stands for the proposition that there is no cognizable federal claim with respect to school dress codes. Defendants essentially claim that pursuant to these 1970s Tenth Circuit cases, school dress codes can never give rise to any constitutional issues that federal courts have authority to review. This argument fails.

*Freeman v. Flake*, 448 F.2d 258 (10th Cir. 1971), *New Rider v. Bd. of Educ.*, 480 F.2d 693 (10th Cir. 1973), and *Hatch v. Goerke*, 502 F.2d 1189 (10th Cir. 1974) are inapposite and do not provide any helpful guidance for deciding Equal Protection challenges to sex-based classifications under current, controlling Supreme Court precedent. In none of those three Tenth Circuit cases, which again were all decided before the Supreme Court squarely decided how sex-based classifications should be analyzed under the Equal Protection Clause, was the court even analyzing a sex-discrimination claim. This distinction is important in an additional respect. In *New Rider* and *Hatch* the plaintiffs challenged the male hair length restriction on grounds that it discriminated on the basis of race, religion, and national origin. *See New Rider*, 480 F.2d at 695; *Hatch*, 502 F.2d at 1191. Crucially, however, the hair length policies at issue in both of those cases were neutral with respect to race, religion, and national origin – which

3

would under current Supreme Court precedent require a showing that they were enacted with discriminatory purpose. *See Washington v. Davis*, 426 U.S. 229, 239 (1976). With such differences in claims and legal context, this early line of Tenth Circuit cases simply does not provide any meaningful guidance for a court in 2020 applying controlling Supreme Court precedent. Furthermore, it is well established that school students do not shed their constitutional rights at the schoolhouse doors. *See Tinker v. Des Moints Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). As discussed below, intermediate scrutiny applies to facial classifications on the basis of sex, and nothing that Defendants have identified in early Tenth Circuit hair policy cases can alter the controlling Supreme Court precedent sex discrimination precedent.

**The dress code violates the Equal Protection Clause of the Fourteenth Amendment.**

**A. Intermediate scrutiny applies to the dress code.**

As discussed above, the Equal Protection clause applies to facial classifications based on sex. *See Craig*, 429 U.S. at 198; *Virginia*, 518 U.S. at 533. For sex-based classifications, intermediate scrutiny applies, and requires that policies that discriminate on the basis of sex must serve important governmental interests and be substantially related to achieving those governmental interests. *Id*. The Supreme Court has described this as requiring an exceedingly persuasive justification for the sex-based classification. *Virginia*, 518 U.S. at 533. The burden to justify a sex-based classification lies with the government. *Id*. The Supreme Court has described this burden as "demanding." *Id*.

Nothing in controlling Supreme Court precedent suggests that an Equal Protection challenge to a facially discriminatory policy should be analyzed any differently simply because the policy occurs in a school setting. In fact, the Supreme Court has suggested that

the level of scrutiny applied to facial classifications remains the same even if the classification is alleged to be designed to benefit historically disadvantaged groups. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989)(stating, "absent searching judicial inquiry into the justification for such race-based measures, there is simply no way of determining what classifications are "benign" or "remedial" and what classifications are in fact motivated by illegitimate notions of racial inferiority or simple racial politics. Indeed, the purpose of strict scrutiny is to "smoke out" illegitimate uses of race by assuring that the legislative body is pursuing a goal important enough to warrant use of a highly suspect tool. The test also ensures that the means chosen "fit" this compelling goal so closely that there is little or no possibility that the motive for the classification was illegitimate racial prejudice or stereotype").

Defendants additionally attempt to remove the sex-based classification from intermediate scrutiny based on a line of cases in the employment discrimination context. That line of cases, as collected and discussed in *Hayden v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 580 (7th Cir. 2014), suggests that, at least in the employment context, a sex-specific dress or grooming policy is permissible so long as it is "just one component of a set of grooming standards that impose comparable, although not identical, responsibilities" on the sexes. However, even the *Hayden* court while applying this line of cases questioned its continued validity in light of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250-51 (1989) which held that employers may not demand employees conform to sex stereotypes associated with their gender. Nothing from the Supreme Court suggests that this line of cases that arose in the context of private employers should supplant the controlling case law definitively establishing the level of scrutiny courts should apply pursuant to the Equal Protection Clause to government policies that discriminate on the basis of sex. Furthermore, while Defendants

5

point out that the Tenth Circuit has interpreted Title VII, Title IX, and the Equal Protection Clause comparably, the cases Defendants cite say nothing about how a court should approach an official government policy that on its face makes distinctions based on sex. *English v. Colorado Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001) applied the Title VII burden-shifting framework for *indirect evidence* of racial discrimination to Equal Protection Clause claims. *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 n. 8 (10th Cir. 2017) again applied the burden-shifting framework for *indirect evidence*, this time applying the Title VII framework to a Title IX claim. *Roberts v. Colo. State. Bd.*, 998 F.2d 824, 832 (10th Cir. 1993) applied Title VII's standards for supporting a *disparate impact* claim to Title IX claims. Nothing in these cases provides guidance for how a court should analyze an official government policy that on its face makes a classification based on sex or suggests anything other than that the Court is bound to apply the controlling standard from the Supreme Court for analyzing sex-based classifications pursuant to established Equal Protection jurisprudence.

Plaintiff has alleged a policy that contains a facial sex-based classification, and Defendants have not provided any applicable, controlling Supreme Court or Tenth Circuit precedent that demonstrates anything other than intermediate scrutiny applies to the sex-based classification at issue here. Accordingly, the burden lies with Defendants to prove an "exceedingly persuasive" justification, and Plaintiff has adequately pleaded a claim for a violation of the Equal Protection Clause.

**B. Even if the *Hayden* standard applies, Plaintiff has adequately pleaded a violation of the *Hayden* standard to survive a 12(b)(6) motion to dismiss.**

Even if something other than intermediate scrutiny applies to Plaintiff's Equal Protection claim, such as the *Hayden* standard for comprehensive grooming codes, Plaintiff has

adequately pleaded a claim sufficient to withstand a 12(b)(6) motion to dismiss. Plaintiff pleads that the dress code "does not impose comparable burdens on the sexes" and it "imposes greater burdens on male students." Compl. ¶¶ 58-59. The dress code, while imposing several restrictions that apply equally to both male and female students, every sex-specific restriction in the dress code imposes greater restrictions on male students than female students. Exhibit 1, pg. 41-43. Defendants argue that Plaintiff's allegations that the dress code "does not impose comparable burdens on the sexes" and that it "imposes greater burdens on male students" are conclusory and not sufficient to withstand a motion to dismiss. However, when those allegations are combined with the policy - which the court may consider at this stage since it is relied on in Plaintiff's complaint, is central to Plaintiff's claims, and neither party disputes its authenticity – and the reasonable inferences that the court must draw in Plaintiff's favor, Plaintiff's allegations are sufficient to plausibly allege a violation of even the *Hayden* standard.

**C. Qualified Immunity does not preclude claims against the individual defendants.**

Qualified immunity generally "protects governmental officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016) (internal quotations omitted). To show that the law was clearly established, the plaintiff may point to on-point decisions from the U.S. Supreme Court or from the Tenth Circuit, or the plaintiff may demonstrate that the clearly established weight of authority from other courts clearly establishes the law. *Id.*, at 1135. The Tenth Circuit has explained that "we do not always require case law *on point*, and the Supreme Court has warned that officials

can still be on notice that their conduct violates established law in novel factual circumstances." *Id.* (internal quotations omitted).

As discussed above, controlling Supreme Court precedent clearly establishes that government policies that contain a facial sex-based classification are subjected to intermediate scrutiny that places the burden on the government to justify the sex-based policy with an exceedingly persuasive justification. *Craig; Virginia.* Even if the Title VII line of cases applies and the *Hayden* standard governs the RMCA dress code, the weight of authority from other courts clearly establishes the law that a sex-specific dress code cannot impose an unequal burden on one sex over the other. *See A.M.*, 830 F.3d at 1134; *Hayden*, 743 F.3d at 577-80. Plaintiff has adequately pleaded a violation of that standard and therefore qualified immunity does not preclude claims against the individual defendants. Furthermore, Plaintiff brings a claim for injunctive relief to among other things enjoin Defendants from enforcing the dress code against Plaintiff and prohibiting the Defendants from taking any disciplinary action against Plaintiff. Compl. ¶¶ 101-105. The individual defendants are proper defendants in Plaintiff's claim for injunctive relief, and therefore, even if the court determines that the individual defendants are entitled to qualified immunity with respect to Plaintiff's § 1983 claim, the individual defendants should remain as defendants in the suit with respect to Plaintiff's claim for injunctive relief.

**II.     Plaintiffs have adequately pleaded a violation of Title IX.**

**A. Plaintiff has adequately pleaded a violation of Title IX regardless of the standard the court uses.**

As discussed above, regardless of the substantive standard the court uses to analyze Plaintiff's Title IX claim, Plaintiff has adequately pleaded a claim for relief sufficient to

withstand a 12(b)(6) motion to dismiss. Because the dress code in this case is an official policy of RMCA that contains a facial classification subject to equal protection clause scrutiny, controlling Supreme Court precedent dictates that intermediate scrutiny applies. Since courts generally analyze Title IX claims and Equal Protection Clause claims with the same standards[1], the Court is obligated to apply intermediate scrutiny to Plaintiff's Title IX claim. Even if the Court applies the *Hayden* standard, as discussed above, Plaintiff has adequately pleaded a claim for relief.

**B. Plaintiff has adequately pleaded a Title IX retaliation claim.**

Title IX prohibits retaliation for protected activity, and a Plaintiff must allege that : 1) he or she engaged in protected activity; 2) defendant had knowledge of the protected activity; 3) materially adverse school-related action was taken against plaintiff; and 4) there was a causal connection between the protected activity and the adverse action. *Tackett v. University of Kansas*, 234 F.Supp.3d 1100 (D. Kan. 2017). To establish a causal connection, a plaintiff must show "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007).

Plaintiff has adequately pleaded "evidence of circumstances that justify an inference of retaliatory motive" by pleading "protected conducted closely followed by adverse action." *Id.* Plaintiff has pleaded that following his mother's complaints to RMCA officials and the RMCA board about the discriminatory nature of the dress code, Plaintiff was subjected to disciplinary actions including an increasing number of suspensions and attempted dis-

---

[1] As discussed above, Plaintiff questions whether that is true in all cases, but regardless of how the Court ultimately answers the question, Plaintiff has adequately pleaded a claim for relief under any standard the court applies.

enrollment. Comp. ¶¶ 70-80. At this stage in the proceedings, these allegations are sufficient to create a reasonable inference of retaliation in violation of Title IX. *See Williams*, 497 F.3d at 1091.

### C. *Chevron* deference does not preclude a Title IX challenge to school dress codes.

*Chevron* deference does not preclude a Title IX challenge to school dress codes. First, Defendants argue that Title IX, Title VII, and the Equal Protection Clause are interpreted interchangeably by courts, and even under Defendants' preferred standard as discussed in *Hayden*, dress codes are subject to review and can violate the law if they impose unequal burdens on the sexes. Again, Plaintiff disagrees that the *Hayden* standard, developed in the Title VII private employment context, governs a government policy that on its face distinguishes on the basis of sex, but if as Defendants assert, Title IX, Title VII, and Equal Protection Clause claims are all governed by the same standard, then a school's dress code can be reviewed under Title IX, and can violate Title IX.

Second, the revocation of the previous Department of Education regulation interpreting Title IX to prohibit sex-specific dress codes without adopting a new regulation declaring sex-specific dress codes acceptable under Title IX is better understood as the agency being silent as to the appropriateness of sex-specific dress codes under Title IX. In the face of silence, it is up to the courts to determine if a sex-specific dress code violates the text of Title IX which prohibits discrimination on the basis of sex in education programs. *See* 20 U.S.C. 1681(a). The text of Title IX prohibits discrimination in education programs on the basis of sex. *Id*. The statute then goes on to describe several exceptions and permits several sex-specific distinctions but does not mention dress codes. *See id.* The fact that Congress listed several examples of sex-specific distinctions that are acceptable under Title IX, but did not include

sex-specific dress codes, is evidence that Congress did not intend to permit sex-specific dress codes.

Finally, even if the Court were to find it relevant that the Department of Education revoked a regulation prohibiting sex-specific dress codes, deference to the agency at most that suggests that the Department of Education determined that Title IX leaves the decision on dress codes to local schools *in the first instance*. As Title VII's prohibition on sex discrimination has been interpreted to allow sex-specific dress codes generally, Hayden makes clear that this permission is not absolute, and a sex-specific dress code that places greater burdens on one sex over the other are not permitted. Similarly, it does not follow that deference to the Department of Education requires an interpretation that all sex-specific dress codes are acceptable under Title IX. The Department of Education's revocation of the dress code regulation does not say that sex-specific dress codes can never be discrimination on the basis of sex in an education program. *See* 20 U.S.C. § 1681(a). A Department of Education decision to place the decision on dress codes with the local school in the first instance does not indicate that even sex-specific dress codes that place a greater burden on one sex over the other does not violate Title IX's prohibition on discrimination on the basis of sex in education programs.

In conclusion, *Chevron* deference does not apply in this situation. Even if deference is required, the Department of Education's action does not indicate that all sex-specific dress codes are automatically acceptable under Title IX. Finally, and in any event, Plaintiff has adequately pleaded that RMCA's dress code violates even Defendants' preferred standard by placing unequal burdens on male and female students. In light of Title IX's language prohibiting discrimination on the basis of sex, it is inappropriate to dismiss Plaintiff's Title IX

claim at this stage on the basis of *Chevron* deference without giving the parties the opportunity for further discovery.

## CONCLUSION

In conclusion, Plaintiff has adequately pleaded violations of Title IX and the Equal Protection Clause. Defendants' Motion to Dismiss should be denied.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss.

DATED: March 6, 2020

Respectfully submitted by:

*s/ Michael Nolt*
Michael Nolt, Esq.
Igor Raykin, Esq.
Christie Bebo, Esq.
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Rd., Suite 150
Aurora, CO 80014
Phone: 720-748-8888
michael@coloradolawteam.com
igor@coloradolawteam.com
christie@coloradolawteam.com
ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2020, a copy of the foregoing was filed with the clerk of the court using the CM/ECF filing system which will send notification to the following:

    Eric V. Hall
    evh@sparkswillson.com

*s/Michael Nolt*
Michael Nolt, Esq.